```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3
     ANDREW NAMIKI ROBERTS,        )  CV 18-00125HG-RT
 4                                 )
              Plaintiff,           )
 5                                 )  Honolulu, Hawaii
        vs.                        )  November 26, 2019
 6                                 )
     RUSSELL SUZUKI, AL CUMMINGS,  )  (51-1) Plaintiff's Motion
 7                                 )  for Summary Judgment;
              Defendants.          )  (54-1)(1) Defendants Russell
 8   _____  )  A. Suzuki and Al Cummings'
                                      Cross-Claim for Summary
 9                                    Judgment, and (2) Memorandum
                                      in Opposition to Plaintiff's
10                                    Motion for Summary Judgment;
                                      (62-1) Motion for Leave to
11                                    File Amicus Curiae

12              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE HELEN GILLMOR
13         SENIOR UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15   For the Plaintiff:      ALAN A. BECK
                             Law Office of Alan Beck
16                           2692 Harcourt Drive
                             San Diego, California 92123
17
                             STEPHEN D. STAMBOULIEH
18                           Stamboulieh Law, PLLC
                             P. O. Box 4008
19                           Madison, Missouri 39130
                             Pro hac vice
20

21   For the Defendants:     JOHN M. CREGOR, JR.
                             Office of the Attorney General-Hawaii
22                           Civil Rights Litigation
                             425 Queen Street
23                           Honolulu, Hawaii 96813

24

25
```

UNITED STATES DISTRICT COURT

```
1   APPEARANCES CONTINUED:

2
    For the Amicus Amicus        PAMELA W. BUNN
3   Everytown For Gun            Dentons US LLP
    Safety Support Fund:         1001 Bishop Street 18th Floor
4                                Honolulu, Hawaii 96813

5   By telephonic               WILLIAM JAMES TAYLOR, JR.
    appearance:                 Everytown Law
6                               450 Lexington Avenue
                                P. O. Box 4184
7                               New York, New York 10017
                                Pro hac vice
8

9

10

11

12

13

14

15

16

17

18

19

20

21  Official Court Reporter:    DEBRA READ, RDR
                                United States District Court
22                              300 Ala Moana Boulevard
                                Honolulu, Hawaii 96850
23                              readit3949@gmail.com

24
    Proceedings recorded by machine shorthand, transcript produced
25  with computer-aided transcription (CAT).
```

UNITED STATES DISTRICT COURT

```
 1    TUESDAY, NOVEMBER 26, 2019                        10:39 A.M.

 2              THE COURTROOM MANAGER:  Civil No. 18-00125HG-RT,

 3    Andrew Namiki Roberts versus Russell Suzuki in his official

 4    capacity as the Attorney General of the State of Hawaii, Al

 5    Cummings in his official capacity as the State of Hawaii.

 6         This case has been called for a hearing on Plaintiff's

 7    Motion for Summary Judgment, Defendants Russell Suzuki and Al

 8    Cummings's Cross-Motion for Summary Judgment and Consent Motion

 9    for Leave to File Brief of Everytown For Gun Safety Support

10    Fund as Amicus Curiae.

11         Counsel, please make your appearances for the record.

12              MR. BECK:  My name is Alan Beck for the plaintiff,

13    Your Honor.

14              MR. STAMBOULIEH:  Stephen Stamboulieh for the

15    plaintiff.

16              THE COURT:  Good morning.

17              MR. STAMBOULIEH:  Good morning.

18              MR. CREGOR:  Good morning, Your Honor.

19         John Cregor, Deputy Attorney General, appearing for

20    Defendants Suzuki and Cummings and the State of Hawaii.

21              MS. BUNN:  Good morning, Your Honor.

22         Pamela Bunn appearing for proposed amicus curiae

23    Everytown For Gun Safety Support Fund.

24              THE COURT:  Good morning.  And I believe we have

25    someone on the phone.
```

UNITED STATES DISTRICT COURT

1          MR. TAYLOR:  Yes, Your Honor.  On the phone Walt

2    Taylor also for proposed amicus curiae Everytown For Gun Safety

3    Support Fund.

4          THE COURT:  Good morning, or probably afternoon

5    where you are.  Where are you located, Mr. Taylor?

6          MR. TAYLOR:  I'm in New York City, Your Honor, so

7    good afternoon.

8          THE COURT:  Okay.  Good afternoon.

9     Okay.  Who is going to speak with respect to the amicus

10   curiae?

11         MS. BUNN:  Mr. Taylor, Your Honor.

12         THE COURT:  Okay.  If you gentlemen and lady would

13   sit down, we will hear from Mr. Taylor with respect to his

14   motion to have the court consider the amicus curiae.

15     You may proceed, Mr. Taylor.

16         MR. TAYLOR:  Yes, Your Honor.  Thank you, Your

17   Honor.

18     On our motion for leave to file an amicus curiae brief,

19   Everytown For Gun Safety Support Fund has a particular interest

20   in this case, the education, research, and litigation arm of

21   Everytown For Gun Safety, which is the nation's largest gun

22   violence prevention organization with millions of supporters

23   across all 50 states, including thousands in Hawaii.

24     As we state in our motion papers, Everytown has a

25   unique -- has unique information and perspective regarding the

UNITED STATES DISTRICT COURT

1    Second Amendment, in particular the doctrinal analysis and

2    historical context which may be relevant -- we believe is

3    relevant to the Court's decision.

4        Everytown has filed amicus briefs on the Second Amendment

5    in courts throughout the country including the United States

6    Supreme Court, the Ninth Circuit, and in district courts

7    considering stun gun laws like the very one at issue here.

8        The parties have consented to the filing of this amicus

9    brief which we've attached to our motion papers, and we would

10   request that the Court use its broad discretion here to grant

11   Everytown's motion and allow us to file the brief attached to

12   our September 16th motion, or deem the brief that's

13   filed -- using the brief that's attached filed therewith.

14       So unless the Court has any questions, which I'm happy to

15   answer, Everytown's prepared to rest on our motion and on the

16   arguments in the proposed brief if Your Honor accepts those.

17             THE COURT:  Thank you.

18       And it is true, Plaintiff, that you are not opposed to the

19   motion being filed?

20             MR. BECK:  We have no opposition, Your Honor.

21             THE COURT:  Okay.  Mr. Cregor?

22             MR. CREGOR:  No opposition, Your Honor.

23             THE COURT:  Okay.  Very good.  The court does grant

24   the motion to have the amicus become part of the record.  It is

25   already filed, so I'm not sure it's necessary that we file it

1    separately.  But if you feel that it is something that you

2    would like to do, Mr. Taylor, you can do that.

3              MR. TAYLOR:  Either way, Your Honor.  I'm happy to

4    file it separately or leave it as is.  We'll take care of that

5    after the hearing's over.

6              THE COURT:  Okay.  Very well.

7              MR. TAYLOR:  Thank you.

8              THE COURT:  Thank you.

9        Okay.  Let's proceed with the plaintiff, who I believe

10   filed first, speaking to their motion.

11             MR. BECK:  Good morning, Your Honor.

12        My name's Alan Beck on behalf of the plaintiff,

13   Mr. Roberts.

14             The matter before this Court today is the

15   constitutionality of Hawaii's complete ban, even in the home,

16   of electric arms.  Electric arms are an arm protected by the

17   Second Amendment per *Heller*.  That is because they're bearable

18   on the person and typically used for lawful purposes of

19   self-defense.  And for that reason, the -- Hawaii's complete

20   ban on them, even in the home, fills no level of heightened

21   scrutiny.

22             As we have established within the briefing and the

23   defendants have stipulated to, there are at least 4.7 million

24   electric arms currently used for purpose of lawful defense in

25   the United States.  That typically fulfills the *Heller*

1   requirement that they be -- that they be -- they be commonly

2   possessed for purposes of lawful self-defense.

3          And to refute the defendant's position that they could be

4   dangerous and unusual, the Ninth Circuit promulgated a test,

5   *United States v. Henry*, for what constituted a dangerous and

6   unusual weapon.  And the example they used there was machine

7   guns.  Machine guns, the Ninth Circuit found, are unusually

8   dangerous because they're capable of firing many thousands of

9   rounds in the course of a single minute.  And for that

10  reason -- and their ownership is, you know, not normal for

11  law-abiding citizens.

12         However, the record here demonstrates that electric arms

13  as a class are less dangerous than -- than handguns, which is

14  the arm that was at issue in *Heller*.  And as I mentioned, there

15  are millions of them owned throughout the United States for

16  purposes of lawful self-defense.

17         And because it's a complete ban within the home, our

18  position is that strict scrutiny should apply.  And I base that

19  off the fact that -- I base that off the fact that in *United*

20  *States v. Chovan*, the Ninth Circuit promulgated a two-step test

21  which determines the level of scrutiny that should be

22  dealt -- applied within a Second Amendment challenge.

23         The first part is whether something is within the scope

24  of the Second Amendment to begin with.  And we -- I establish

25  that with the earlier portion of my argument because it's a

1   complete ban on a bearable arm that's used for purposes of

2   lawful self-defense.  Then we fulfill the first step of

3   the -- of *United States/Chovan* Ninth Circuit test.

4        The second part of that test is how much of a burden it

5   is at issue.  And here, because it is a complete ban even

6   inside the home, this goes to the very core of the Second

7   Amendment right.  And unlike other cases where there may be a

8   waiting period at issue or something that just simply burdens

9   the right to a lesser degree and the Ninth Circuit has applied

10  intermediate scrutiny, here this is a complete ban, a

11  categorical ban on a entire class of protected arms and, thus,

12  we offer that strict scrutiny should apply.

13       And under strict scrutiny, the defendants, the State of

14  Hawaii, has effectively conceded that there's no way for them

15  to justify it because their briefing was fairly sparse on that.

16       And -- however, so I'll focus the argument on

17  intermediate scrutiny.  And to satisfy intermediate scrutiny,

18  the Court -- I apologize -- the State needs to establish a

19  important government interest.  That they haven't done in this

20  case.

21       They -- other than a -- no argument can be made here that

22  there's any addition to public safety that is apart from, say,

23  the complete -- that would be different than the complete ban

24  that was at issue in *Heller* on handguns.  That's because these

25  arms are less dangerous and they serve a unique role because

1    they offer a means of less-than-lethal self-defense.

2         So our position is is that, in fact, striking this ban

3    would, in fact, add to the public safety, the reason because it

4    would allow people to have a less lethal alternative to using a

5    firearm in situations where -- especially if the person is

6    maybe older or simply smaller, where they would need to use a

7    weapon to defend themselves but would prefer not to use a

8    lethal force, even if they might have the legal right to use

9    lethal force.

10        So the same reasons the ban at issue in *Heller* was

11   unconstitutional, in addition to the fact that this is a

12   nonlethal form of self-defense, that we may actually see -- we

13   see no public safety argument.  And this is the position that

14   four other courts have found in ruling on these -- on complete

15   bans electric arms in different states.

16        The first one was the Michigan Court of Appeals in *Yanna*

17   *v. State of Michigan*.  It struck Michigan's complete ban on

18   electric arms.

19        The -- in New York, *Avitabile*, again, the court applied

20   intermediate scrutiny and found that -- or they actually

21   applied -- they said either under strict or intermediate

22   scrutiny the court could not find a government interest in

23   regulating these arms.

24        And then similarly, in Illinois and in Massachusetts, the

25   state supreme courts for those respective states found a

1   similar -- similar complete bans.  They simply could

2   not -- there was no government interest that could justify

3   them.

4        So if I could -- does the Court have any questions

5   regarding the briefing that --

6             THE COURT:  Not at this time.

7             MR. BECK:  And so I -- that's the core of our

8   argument.  And if the Court would allow, I'd like to respond to

9   Mr. Cregor's argument after he's had an opportunity.

10             THE COURT:  Thank you, Mr. Beck.

11        Mr. Cregor.

12             MR. CREGOR:  Good morning, Your Honor, and may it

13   please the Court.

14        I'm here to argue for the State and the state defendants,

15   and the first thing I want to do is apologize to the Court.  In

16   preparing for this argument, I realize that we had not fully

17   complied with the Court's order with regard to the concise

18   statement in that we hadn't fully highlighted our documents.

19   And I would offer, if the Court takes this under consideration,

20   to provide a properly highlighted concise statement of fact

21   after the argument today.

22        With that apology out of the way, let me say that I

23   realize that we have an uphill battle in front of us here; the

24   momentum is against us.  But there's no compelling precedent

25   regarding -- or compelling this Court to invalidate Hawaii's

UNITED STATES DISTRICT COURT

1   electric gun ban.  The Ninth Circuit has not said that.

2       Now, we're here on motions for summary judgment.  Summary

3   judgment requires that there be no genuine issues of material

4   fact and that the movants are entitled to judgment as a matter

5   of law.

6       As defendants, we've cross-moved because our burden is to

7   show that -- basically that the plaintiffs haven't shown that

8   they have the evidence and that there's no issues of material

9   fact.

10      I'm listening to Mr. Beck's argument and I was struck by

11  this when I read through the briefs again.  Their position is

12  that these electric guns are used for self-defense and

13  particularly self-defense inside the home.  Now, in *Heller*, the

14  Supreme Court clearly stated that handguns are the favored

15  defensive weapon inside the home.  It didn't address electric

16  guns.  The only Supreme Court ruling we have on electric guns

17  is you can't say that they're not protected by the Second

18  Amendment because they weren't in existence in 1789, or that

19  they're not uniquely suited for military use.  That really has

20  nothing to do with this case at this point.

21      The fact is there is no evidence presented by the

22  plaintiffs that electric guns, Tasers, stun guns, whatever, are

23  indeed used for self-defense or, more particularly,

24  self-defense inside the home.

25      If we look at their briefing, what we have basically is

1    the numbers of electric guns that have been sold --

2    manufactured or sold, subtract the ones that are used by law

3    enforcement, and then we had the leap of faith that whatever's

4    left must be used for defense.  There's no evidence of that and

5    that is critical to a Second Amendment analysis under *Heller*.

6         There's certainly -- in fact, there's no evidence that

7    they're used for that.  There's certainly no evidence that even

8    approaches their being a favored defensive weapon.  In fact,

9    the evidence that's before this Court is that they are used

10   offensively by law enforcement.  This is pretty clear

11   throughout all of the documentation and the exhibits, whether

12   that's what they're for, or some of the exhibits that show how

13   people die when Tasered by police which is obviously evidence

14   of their dangerousness -- but that's what they're used for.  If

15   they were a class of weapons that are favored or secondarily

16   favored for defense, that might change the issue here, but

17   they're not.

18        So where do we go from there?  Well, if they're not these

19   favored defensive weapons, then we don't implicate the core of

20   the Second Amendment, and at best we're at intermediate

21   scrutiny if they are, in fact, even protected by the

22   Second -- or fall under the Second Amendment.

23        Now, the State of Hawaii has a compelling interest in

24   protecting the health and safety of its citizens, and in doing

25   so -- or to do so, I should say, the state has banned electric

1    guns.  Now, we have before the Court portions of the committee

2    reports, the legislative history of that statute.  Yes, it was

3    passed back in the '70s, but it was reexamined twice since

4    then.  It was examined when the statute was amended to allow

5    law enforcement to keep the -- keep and use electric guns, and

6    it was amended later when it was made available for military

7    when acting in a law enforcement capacity or in conjunction

8    with state law enforcement.

9         In each case the legislature found that maintaining the

10   ban was a -- necessary and appropriate for the protection of

11   the citizens of Hawaii.  That passes intermediate scrutiny.

12        And let's move to the question of dangerous and unusual

13   which of course is an exception and which has not been defeated

14   here.  They don't have to be machine guns to be dangerous.  We

15   know that these incapacitate people and on occasions, way too

16   many occasions, have killed people.  Just because they're less

17   lethal than firearms or the handguns, which are the favored

18   protection device, doesn't mean that they aren't dangerous.

19   Again, it's a leap of faith to say that they're less

20   lethal -- or because they're less lethal than firearms they're

21   not dangerous.  They clearly are dangerous.

22        And because they're not used widely for defense, they

23   remain unusual.  They're less unusual than they were in the

24   '70s.  They're certainly less -- and they're getting more and

25   more usual, but they remain dangerous and unusual and there is

1    no evidence presented to show that they're not.

2        Although I guess I haven't presented evidence to this

3    particular fact, but it stands to reason that they -- the

4    dangerousness is amplified by the fact that because they don't

5    shoot, they're not firearms, they don't kill people that way,

6    people would be lulled into using them because they think

7    they're less than -- less lethal.

8        We also have presented evidence, though it's limited, that

9    they're capable of being used for torture, that a person who's

10   being Tased, for example, can be repeatedly stunned or someone

11   who has had a stun gun held against him can be repeatedly

12   zapped, to use a common term.

13       So let's move on 'cause I'm going to be brief.  I don't

14   have that much to say today.  I want to highlight an argument

15   made by the amicus with regard to the numerosity argument.  I

16   think the numerosity of stun guns is well-argued, that it's a

17   circular argument, but I'm -- the more I thought about it, he

18   mentioned the federalism argument and the Supreme Court has

19   left gun control much up to the states.  I think Justice Scalia

20   had said that federalism is definitely an important part of the

21   Constitution.  There's no requirement that I know of that gun

22   control must be uniform throughout the states.  It's beyond the

23   Second Amendment.

24       Our legislature has thoroughly examined electric guns

25   three times and reviewed them and determined that they should

1    be limited to law enforcement and the military.  It seems it

2    would violate the federalism to say, for example, that just

3    because there are a huge number of electric guns, for

4    example -- just for an example -- in the city of Chicago, that

5    they should be banned in Hawaii because they're not dangerous

6    and unusual.  They still are in Hawaii.  We don't have to have

7    the same gun control, weapon control laws as the state of New

8    York or the state of Illinois or Michigan.  That's left up to

9    the state of Hawaii and our legislature has spoken.

10        And I'm jumping a little bit, but I want to go back to the

11   intermediate scrutiny and just point out that there are less

12   than -- other less-than-lethal alternatives, and because there

13   are alternatives, that does -- I'm not saying that very well.

14        The alternatives point to the fact that these are not

15   necessary defensive weapons even if there had been evidence

16   that they are used that way.

17        So based upon the requirements for summary judgment, the

18   position that there are no genuine issues of fact and that the

19   moving party is entitled to judgment as a matter of law,

20   plaintiff has totally failed in this case.

21        Thank you, Your Honor.  Do you have any questions?

22            THE COURT:  Not at this time.

23            MR. CREGOR:  Thank you.

24            THE COURT:  Thank you.

25        Now, Mr. Beck, did you want to speak before I let the

1    amicus speak, or would you rather wait until after I let the

2    amicus?

3             MR. BECK:  After the amicus, Your Honor.

4             THE COURT:  Okay.  Mr. Taylor, you wanted to speak?

5             MR. TAYLOR:  Certainly, Your Honor.

6        In our brief, I'll just highlight the points we made there

7    briefly.  We have two points we think would interest the Court

8    in giving a more complete picture of the relevant Second

9    Amendment doctrine here.

10        The first is plaintiff contends -- has contended that the

11   law is -- the law here, the stun gun law, electric gun law at

12   issue is categorically unconstitutional under *Heller* because it

13   prohibits a class of arms based on sales data.  That's an

14   argument made in their briefs.  I'm not sure if they're

15   sticking to it here.  He seems to have gone -- relying heavily

16   on strict scrutiny and not the categorical argument.

17        But to the extent the categorical argument remains, no

18   court has ruled this way.  No court has said that because

19   something is widely sold or manufactured, it's categorically

20   unconstitutional under the Second -- you know, no federal court

21   of appeals, I should say.

22        This would create -- a rule like this would create

23   perverse -- for example, for gun manufactures, it would allow

24   them to control the Second Amendment by flooding the market

25   with particular firearms.  It would impede federalism, as

1   Mr. Cregor mentioned, and it would be really contrary to the

2   self-defense interest that underlies *Heller* and the Second

3   Amendment and is the core of the right.

4         The issue under *Heller* and with the Ninth Circuit cases

5   is about the burden that's placed on the right of self-defense,

6   and a categorical rule that just looks at sales data or

7   manufacturing data and doesn't look at the impact on

8   self-defense is one that could create a lot of dangers both in

9   this case and further into the Second Amendment.

10        I would point out in the *Fyock v. Sunnyvale* case which is

11   a Ninth Circuit decision, the court there was faced with

12   a -- what was -- plaintiffs referred to in that case as a total

13   ban on large-capacity magazine, the magazines overwhelmingly

14   chosen by law-abiding citizens that accounted for roughly

15   40 percent of all magazines was plaintiff's argument in that

16   case.

17        The Ninth Circuit actually accepted for the purposes of

18   the preliminary injunction motion those findings that those

19   magazines were in common use, and the plaintiff had presented

20   sales statistics indicating millions of magazines had been sold

21   in the last two decades in the United States.  But the court

22   there, the Ninth Circuit, did not find that that was where it

23   stopped.

24        The court had to go on to do an intermediate scrutiny

25   analysis, and that is -- that is -- that is what the Court

UNITED STATES DISTRICT COURT

1   should do here as well if it finds that this burdens the Second

2   Amendment right.

3        I'm not going to repeat the arguments on circularity and

4   federalism which are also in the brief and Mr. Cregor has

5   already covered.

6        I would just -- our other argument on plaintiff's

7   argument on strict scrutiny which should really be -- is sort

8   of novel as his argument about a categorical rule that he wants

9   the Court to apply.  The Ninth Circuit has never applied strict

10  scrutiny in the Second Amendment case.  Only two court of

11  appeals have ever held that strict scrutiny govern the Second

12  Amendment challenge, and both of those cases were promptly

13  vacated, taken en banc, and intermediate scrutiny was applied.

14       Ninth Circuit has told us what it looks to in Second

15  Amendment cases is how close the law comes to the core of the

16  Second Amendment right and the severity of the law on the

17  burden on that right.  And the Ninth Circuit has also told us

18  that the core of the right is the right of law-abiding

19  responsible citizens to use arms in defense of their home.

20       And going back to the case *Fyock*, the court there was

21  faced with arguments that, Well, you're taking away every

22  large-capacity magazine and prohibiting me from having that,

23  the argument that This is a class of arms, the argument This

24  takes away my right to use this arm -- this type of arm for

25  self-defense.  The Ninth Circuit there rejected that argument

1   saying -- or holding the district court and looking to the

2   other types of weaponry, the other types of magazines, the

3   other types of firearms, including the handgun, which is the

4   quintessential self-defense weapon which is available to the

5   plaintiff in this case, which was available and called for a

6   lesser scrutiny, in that case intermediate scrutiny.

7         So I would -- I would point the Court to *Fyock.*  I would

8   also point the Court to the many other cases that even are

9   favorable to plaintiff which he relies on which have all

10  applied in the federal court intermediate scrutiny in these

11  sorts of challenges.  There have been, as plaintiff notes, some

12  state courts which have applied -- or seem to apply the more

13  categorical approach, but those cases, as we explained in our

14  brief, are against the weight of authority, against all federal

15  case law which apply intermediate scrutiny just on challenges,

16  and it was directly contrary to Ninth Circuit precedent,

17  including the decisions in *Fyock* and *Duncan*, which have applied

18  intermediate scrutiny with Second Amendment challenges to

19  prohibitions on a type of weapon, in that case large-capacity

20  magazine prohibitions.

21        The final thing I would point to Your Honor to look at is

22  in our brief we also highlight some of the historical record of

23  the prohibition of weapons which are far less deadly than

24  firearms, weapons far less deadly than the firearms -- I

25  apologize there -- regulated in various ways.  So this history,

1    if it doesn't have the Court look to sort of the analogous --

2    and I analogize it to sort of the stun gun prohibition here and

3    say this law potentially is outside the scope -- it certainly

4    is a ground for the Court to conclude that intermediate

5    scrutiny is the appropriate scrutiny analysis which the Ninth

6    Circuit has consistently applied and which this Court should do

7    so as well.

8         Thank you, Your Honor.  If you have any questions, I'm

9    happy to answer them.

10         THE COURT:  Thank you, Mr. Taylor.

11    You wish to speak again, Mr. Beck?

12         MR. BECK:  Yes.  Thank you, Your Honor.

13         I'll discuss Mr. Taylor's argument first.  And the only

14    part that I really want to home in on is that the matter before

15    this Court is significantly different than was before the court

16    in *Fyock*.  In *Fyock*, the court found that there was no actual

17    firearm that was banned from use because of the fact that

18    magazines over 10 rounds were -- were banned.  There's -- you

19    can use a handgun, rifle, et cetera, for purpose of lawful

20    self-defense with magazines that hold 10 rounds or less, and

21    the record of *Fyock* demonstrated that the average defensive use

22    of a firearm is 2.1 shots.

23         So -- and for that reason, the court found that this was

24    not a severe ban on the right to self-defense because there's

25    these magazines that hold 10 rounds or less, and so no actual

1  firearm was being banned.

2      Here we're dealing with a complete ban on an actual arm.

3  And unlike in *Fyock* where you still could use a firearm of your

4  choice, here we're closer to a complete ban on the use of these

5  arms because there's no alternative for -- for use.  So -- and

6  that's why *Fyock*'s distinguishable.  And no federal circuit

7  court has dealt with this severe restriction like this on a arm

8  designed for lawful self-defense within the home.

9      So the closest that a court has found is the Seventh

10  Circuit *Ezell* was evaluating -- and Seventh Circuit's adopted

11  the same true step and local tool as the Ninth Circuit has.

12  And *Ezell*, because there was a complete ban on firing ranges,

13  they said that was still close enough that they would use

14  something called New York strict scrutiny, and that's the

15  closest case where this has been a complete ban on the use of

16  firearms for -- I'm sorry -- a complete ban on the right within

17  the home.  Even in *Ezell,* that was just simply a case dealing

18  with a firearms trading -- banning firearms trade within the

19  city of Chicago.

20      Now I would like to move to Mr. Cregor's argument.

21  The -- their argument, to a large degree, contradicts their

22  request -- our request for omissions which they've already

23  admitted to in this case.  In -- they've already admitted that

24  there are 4.7 million electric arms owned by civilians for

25  lawful purposes in the United States.  They can't come back at

1    this later proceeding -- and per Ninth Circuit's precedent,

2    there's a case called *Tillamook* which is in -- cited to in the

3    reply brief -- and go against what they've already admitted to.

4          And in *Heller*, it's -- they have found that it's simply

5    enough that they are being used for lawful purposes in this

6    case for them to receive Second Amendment protection.

7          In this case, you know, the arm very clearly is used for

8    lawful self-defense.  They've also admitted specifically the

9    core purpose of a stun gun at least is for purposes of lawful

10   self-defense.

11         So to the extent that Mr. Cregor's argument's going to be

12   given weight today, I'd like -- that needs to be weighed

13   against what the State has already admitted to.  And

14   they -- between these two admissions I don't see how they can

15   make a defensible claim that there's a material fact as to

16   whether electric arms are not used for purposes of lawful

17   defense.

18         And additionally, that simply is what they are used

19   for -- I mean, the police departments, et cetera.  And the

20   various state courts have -- the various -- the four courts

21   that I mentioned, they've discussed this matter.  The only use

22   is for nonlethal self-defense.  That's simply what they are

23   designed for.

24         So beyond just simply pointing out the request for

25   admissions, I have no further argument for this Court, unless

1    the Court has any questions.

2              THE COURT:  Well, I do have a question.  There is a

3    Second Amendment case pending before the United States Supreme

4    Court.  They've granted certiorari in *United States* -- excuse

5    me -- in *New York State Rifle and Pistol Association, Inc. v.*

6    *City of New York*, and it's set for oral argument on

7    December 2nd, which is next week.  In the briefing before the

8    Supreme Court, parties have raised questions as to the level of

9    scrutiny to apply in cases challenging a statute on grounds

10   that it violates the Second Amendment.

11         So I believe we can look forward to guidance from the

12   United States Supreme Court with respect to what standard we

13   should be using.  And I am wondering whether it would not be

14   appropriate to wait, since we have this division in terms of

15   the position of the parties as to what standards should be

16   used, to get guidance from the United States Supreme Court so

17   that we could at that point apply it and thereby avoiding any

18   unnecessary appeals or further briefing, et cetera, with

19   respect to the case as it stands right now.

20         What's your thought on that, Mr. Beck?

21              MR. BECK:  Now, this answer may sound -- be somewhat

22   self-serving, but if this Court were to find that this

23   ban -- just like the court in New York did -- does not survive

24   intermediate scrutiny, I wouldn't see why that would be

25   necessary because the Second Circuit in *New York Rifle and*

1   *Pistol Association* applied -- admittedly in upholding the

2   transport law that was in issue, that is at issue in front of

3   the Supreme Court applying intermediate scrutiny, but applying

4   the same form of intermediate scrutiny, the New York District

5   Court found that the Taser ban in the State of New York was

6   unconstitutional.

7          So to the extent that this Court were to find this ban to

8   be unconstitutional under intermediate scrutiny, it seems like

9   it would be redundant to wait upon further guidance from the

10  Supreme Court because nowhere in the briefing has the U.S.

11  Supreme -- I'm sorry -- have the parties before the Supreme

12  Court argued that anything less than intermediate scrutiny

13  would apply.

14         However, to the extent that perhaps this Court might feel

15  that intermediate -- it could uphold this ban under

16  intermediate scrutiny, I suppose there could be an argument

17  that it might want to find -- see if a higher level of scrutiny

18  might be warranted based upon the briefing.

19         But based upon my review of the briefing and of the

20  Second Circuit, nothing less than intermediate scrutiny -- will

21  the Court do something that would make anything less than

22  intermediate scrutiny apply here.

23                THE COURT:  If I understand you, you still leave the

24  possibility open that the Supreme Court will say something that

25  is more enlightening.  You're saying if I do A, B, and C, it's

1     not a problem.

2          But what I'm pointing out is that we don't know what they

3     will do, and as a federal district court, I am guided by the

4     appellate courts of the circuit I am in and, of course, by the

5     decision of the United States Supreme Court.

6          And I'm pointing out that the very issue that we're

7     talking about is coming up next week before the United States

8     Supreme Court, so wouldn't it be a bit of hubris on my part to

9     think that I can figure that out?

10          MR. BECK:   I -- our position is -- and I

11     respect -- I understand the Court's position; however, our

12     position is is that the level of scrutiny before this Court,

13     intermediate scrutiny as applied by the Second Circuit, was

14     already used to strike down the ban at issue in the City of New

15     York -- I'm sorry -- in the State of New York.  And it

16     doesn't -- it doesn't make any difference to my client what

17     level of scrutiny or whatever, what form of legal analysis is

18     used for him to at the end of the day be allowed to exercise

19     his -- what we offer as his right to keep a electric arm inside

20     his home.

21          And because the lowest level of scrutiny that would be at

22     issue here is something that's not going to be affected by *New*

23     *York Rifle and Pistol Association*, there's a countervailing

24     interest that my client has -- and this is a civil rights

25     matter -- to have his civil rights decided in a somewhat

1    expeditious manner.  And if there was some concern that perhaps

2    the Court's decision might -- you know, might use intermediate

3    scrutiny when maybe *New York Rifle* would compel this Court to

4    apply strict scrutiny, however, with the right being the same,

5    what I would respectfully suggest this Court do is use the

6    exact same rationale that two different courts have used in the

7    State of New York.

8         In the first case --

9              THE COURT:  Not my circuit, Mr. Beck.

10             MR. BECK:  Yes, I understand that.  But the -- New

11   York is the circuit that's being reviewed in front of the U.S.

12   Supreme Court, Your Honor.  And because in this situation where

13   we're dealing with somewhat similar scenario, I would

14   respectfully offer that if this Court could simply say that

15   under either strict or intermediate scrutiny, without actually

16   making a final determination on what level of scrutiny would

17   apply -- but even assuming intermediate scrutiny would apply,

18   that this ban is unconstitutional, and that would be in line

19   with every court that has dealt with this very issue, which --

20             THE COURT:  Okay.  Thank you.

21             MR. BECK:  Thank you, Your Honor.

22             THE COURT:  Mr. Cregor?

23             MR. CREGOR:  May I approach, Your Honor?

24             THE COURT:  Yes.

25             MR. CREGOR:  As to the Court's question, the

1   argument's next week and it seems to me very prudent to wait

2   until we get some decision from the Supreme Court.  The Supreme

3   Court's been known to surprise us in many cases, particularly

4   in important cases, and it may rule way beyond the questions as

5   presented by Mr. Beck.

6       And just because -- so I do urge the Court to defer a

7   little time to see what the Supreme Court does.

8       He seems to argue that it makes no difference because the

9   Second Circuit has already ruled that the ban on electric

10  guns -- excuse me -- does not pass intermediate scrutiny.  It's

11  our position that it does pass intermediate scrutiny, and the

12  Court pointed out we're in the Ninth Circuit, and the Ninth

13  Circuit and the Second Circuit have been known to differ at

14  various times in the past and could well look at it

15  differently.

16      I only want to respond to the factual argument that, yes,

17  we have admitted that there are many electric guns in the hands

18  of civilians for lawful purposes.  We have not admitted nor

19  have they established that they are in the hands of civilians

20  for self-defense within the home which is the standard

21  enunciated in *Heller* for Second Amendment.

22      With that, I rest on my argument that they have not

23  established the basis for a summary judgment.

24      Any further questions, Your Honor?

25          THE COURT:  No.  Thank you, sir.


UNITED STATES DISTRICT COURT

1          MR. CREGOR:  Thank you, Your Honor.

2          THE COURT:  And, Mr. Taylor, did you wish to speak

3    to the question of the Supreme Court case next week and the

4    issue of staying the matter until they have ruled?  Mr. Taylor?

5          MR. TAYLOR:  Yes, Your Honor.  I do -- I do think

6    that what Your Honor suggested, to wait for guidance from the

7    court argument that's going to take place on Monday, makes a

8    lot of sense given the division and debate here about the

9    standard of scrutiny.

10          I would also mention that there's another case currently

11    where briefing is completed in the Ninth Circuit, *Duncan v.*

12    *Becerra* case, which plaintiffs rely on and cite in their

13    briefing.  It was a large-capacity magazine case, so a type of

14    weapon -- a restriction on a type of weapon.

15          The parties there have also debated over what the proper

16    level of scrutiny is for that type of, you know, prohibition or

17    ban, if you will, is what the plaintiffs there call it, on a

18    particular type of weapon.  There's an argument like there is

19    in this case that a categorical rule should apply from the

20    plaintiffs or strict scrutiny.  The defendants say -- argue

21    either it's not within the scope of the Second Amendment at all

22    or that intermediate scrutiny analysis should apply.

23          So even beyond *NYSRPA* case, which I agree with Your

24    Honor's suggestion, and I also think there might be even after

25    *NYSRPA* a thought to waiting to see what the Ninth Circuit does

1   in that *Duncan* case, but I just wanted to point that out to the

2   Court.

3         THE COURT:  Okay.  Thank you.

4      I am going to -- I did want to give the parties the

5   opportunity to make their arguments today.  We have extensive

6   briefing in this matter, but the court is guided by the Supreme

7   Court of the United States which in six days is going to

8   issue -- not issue -- excuse me -- is going to hear arguments

9   with respect to the central issue here:  What is the level of

10  scrutiny that the courts should be doing?

11     So I'm going to stay the matter and I am going to give the

12  parties 45 days after the ruling of the Supreme Court to file

13  any further briefing, if they should choose to file any further

14  briefing, and that includes the amicus.

15     So I believe we will all be interested to hear the

16  arguments next week and then the resulting decision.

17     Thank you.  We are in recess.

18         (Proceedings concluded at 11:25 A.M.)

19

20

21

22

23

24

25

```
 1                    COURT REPORTER'S CERTIFICATE

 2

 3              I, DEBRA READ, Official Court Reporter, United

 4   States District Court, District of Hawaii, do hereby certify

 5   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 6   true, and correct transcript of the stenographically reported

 7   proceedings held in the above-entitled matter and that the

 8   transcript page format is in conformance with the regulations

 9   of the Judicial Conference of the United States.

10
                 DATED at Honolulu, Hawaii, December 10, 2019.
11

12

13                       /s/ Debra Read

14                  DEBRA READ, CSR CRR RMR RDR

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT